Esther ATAKPA, Plaintiff,

v.

PERIMETER OB–GYN ASSOCIATES, P.C.; Charlene Vogt, CNMW; Leslie Anne Pope, D.O.; and Does 1 and 2, Defendants.

Civ. No. 1:92–CV–2459–JEC.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 30, 1994.

James Patrick McCrary, Atlanta, GA, for plaintiff.

Robert P. Riordan, Alston & Bird, Atlanta, GA, for defendants.

### ORDER

CARNES, District Judge.

This case is presently before the Court on Plaintiff's Motion for Summary Judgment [63–1], or in the alternative, Plaintiff's Motion for Partial Summary Judgment [63–2], Defendant Perimeter OB–GYN's Motion for Leave to File Supplemental Brief [74], and Defendant Perimeter OB–GYN's Motion to Amend Response to Plaintiff's Discovery [77–1], or in the alternative, Defendant Perimeter OB–GYN's Motion to Withdraw Response with Brief in Support [77–2]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion for Summary Judgment [63–1] is denied; Plaintiff's Motion for Partial Summary Judgment [63–2] is denied; Defendant Perimeter OB–GYN's Motion for Leave to File Supplemental Brief [74] is granted; Defendant Perimeter OB–GYN's Motion to Amend Response to Plaintiff's Discovery and/or Motion to Withdraw Response with Brief in Support [77] is granted in part and denied in part.

### BACKGROUND

The undisputed facts and those facts taken in a light most favorable to the nonmovant establish the following. Plaintiff, Esther Atakpa is a black woman, presently 29 years of age, who immigrated to the United States from Nigeria in or about 1983. Born in Nigeria, plaintiff is married to Kingsley Atakpa, a U.S. citizen; the Atakpas live in

the Atlanta area. Defendant Perimeter Ob–Gyn Associates, P.C. ("Perimeter") operates an obstetrics and gynecological ("ob-gyn") clinic in the Atlanta area. Perimeter is owned by physicians Leslie Anne Pope, D.O.,[1] Alan Pomerance, M.D. and Bernard Greenberg, M.D. Since 1991, certified nurse-midwife Charlene Vogt, CNMW, ("Vogt") has worked for Perimeter.[2] At all times relevant to plaintiff's treatment by Perimeter, Vogt worked under a set of written protocols. (Def. Perimeter Reply [72] at Aff. of Greenberg, Ex. A.) For the initial visit, this protocol lists "HIV screen (have patient sign informed consent)" among fifteen laboratory tests. Id. at 1. Perimeter provides ob-gyn and nurse-midwife services to the public. Since January, 1992, some 25 persons have worked out of Perimeter's offices. During that time, Perimeter has directly employed at least 21 people, including Vogt, Drs. Pope, Pomerance and Greenberg, and an ultrasound technician who also provides services there. Perimeter also subleases space to another physician and his two employees. In 1992, Perimeter's gross receipts were some $1.2 million. Perimeter accepts Medicare and Medicaid patients.

Plaintiff called the "Med–Call" physician referral service in connection with her pregnancy, and was referred to Dr. Pope at Perimeter. Plaintiff called Perimeter and was scheduled for an appointment with Dr. Pope on January 17, 1992. When plaintiff arrived for her appointment on January 17, 1992, she was told that Dr. Pope was in surgery and unavailable to meet with her. Instead, plaintiff was referred to nurse-midwife Vogt. Vogt met with plaintiff, oriented her to the practice, asked about her health history, performed a physical examination upon her, and had plaintiff complete certain clinic forms; plaintiff told Vogt that she was Nigerian.

Vogt asked plaintiff to complete a Perimeter "HIV HIGH RISK WOMEN HISTORY/FLOW SHEET." (Pl.Mot. for Sum.J. [63] at Ex. A.) Plaintiff responded "no" to all of the questions on the form, except those

---

1. Dr. Pope is no longer a defendant in this action.

2. There has been some testimony in this case that she may be a profit sharer in the practice, but

plaintiff has assumed for purposes of this Motion and Brief that Vogt has been a salaried Perimeter employee only. (Pl.Brief [63] at 3.)

asking about: (a) her husband's/partner's other sex partners; (b) her own emigration from a "high risk" country; and, (c) her partners' emigration from a "high risk" country—these questions she left blank. Plaintiff also signed the form expressly refusing an HIV test.

Aware through information volunteered by plaintiff that plaintiff was at higher than normal risk for HIV as an African immigrant, Vogt discussed with plaintiff the importance of HIV testing in order to obtain proper prenatal care. Vogt's recorded notes state, "Refused HIV because believes if you know you have AIDS then you die—will think about it—Told would discuss at next appt....." (Dep. of Vogt at Ex. P–2.) Upon leaving the clinic on January 17, 1992, plaintiff paid Perimeter $200.00 for her initial visit.

On February 7, 1992, plaintiff returned to Perimeter for ultra-sound diagnostics. At that time she did not see Vogt or any of the clinic doctors, or discuss HIV-testing at all.

On February 10, 1992, prior to seeing plaintiff again, Vogt met with Dr. Greenberg to discuss plaintiff's refusal to consent to HIV testing. Dr. Greenberg informed Vogt that plaintiff must be tested for HIV in order for plaintiff to receive treatment from Perimeter.

On February 12, 1992, plaintiff returned to Perimeter and met with Vogt. Vogt told plaintiff that HIV testing would be mandatory for plaintiff if she wanted to continue to receive treatment from Perimeter. Plaintiff declined to take the test, got up from the examination table, and left the clinic. Plaintiff left the clinic that day, upset at how she had been treated, and subsequently sought treatment elsewhere.

On or about February 13, 1992, plaintiff's husband, Kingsley Atakpa, contacted Perimeter to complain about how his wife had been mistreated. Mr. Atakpa spoke to nurse Cayla Richardson and asked why his wife had been required to submit to an HIV test. Richardson told Mr. Atakpa that plaintiff would have to submit to an HIV test because "she was from the high risk area and that that was what made her at risk." (Dep. of Richardson, at 20.)

After the call on February 13, 1992, Richardson wrote a note to Vogt, wherein she stated:

Charli—I told him [Kingsley Atakpa] it was office policy to have test done if from high risk area. He is upset because he's spent $510.00 for nothing when it could have been avoided. I told him you'd call him either today or tomorrow.

(Pl.Brief [63] at Ex. B.)

On February 13 or 14, 1992, Vogt spoke with Mr. Atakpa by telephone. Mr. Atakpa testified that Vogt told him that office policy required HIV testing for all patients. (Dep. of Kingsley Atakpa at 25–26.)

On February 17, 1992, plaintiff wrote a letter complaining about Perimeter's conduct toward her to the Medical Association of Georgia. (Pl.Brief [63], Ex. C.) The Medical Association of Georgia never responded. Plaintiff obtained legal counsel. Plaintiff's counsel attempted to resolve plaintiff's grievances through communications with MAG Mutual Insurance Co., defendants' insurance carrier. This effort was unsuccessful, and plaintiff filed this suit.

## DISCUSSION

### I. DEFENDANT PERIMETER'S MOTION TO FILE SUPPLEMENTAL BRIEF

Defendant Perimeter has filed a Motion to File a Supplemental Brief on the issue of plaintiff's standing to sue for injunctive relief under § 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794; Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12188(a)(1) and 42 U.S.C. § 2000a–3(a). Both parties agree that this Court has the independent obligation to evaluate the standing of a plaintiff. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (standing is not merely pleading requirement, but "an indispensable part of the plaintiff's case"); *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (alleging actual case or controversy is threshold requirement of federal court jurisdiction);

*Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329, 1333 (N.D.Cal.1994). Because the Court could have considered plaintiff's standing to sue for injunctive relief *sua sponte*, this Court finds that the issue of standing is properly before the Court and will consider the Supplemental Brief filed by defendant Perimeter, and Plaintiff's Response in Opposition. Accordingly, this Court grants Defendant Perimeter's Motion to File a Supplemental Brief.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff in her Motion for Summary Judgment has expressly withdrawn all her purely race-related claims based upon 42 U.S.C. §§ 1981 and 1982. Plaintiff has also withdrawn her claims against Vogt under § 504 and § 2000d of the Civil Rights Act of 1964 ("Title VI"). *See* "Conclusion" *infra* (regarding dismissal without prejudice). Thus, plaintiff's remaining claims are pursuant to the ADA, § 504 (only against Perimeter), Title VI (only against Perimeter), breach of contract, and intentional infliction of emotional distress.

### A. Summary judgment standard

■ Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552.

■ The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2552; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence[3] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[8–13] A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

---

3. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

## B. Standing

■ Plaintiff has sought compensatory damages and injunctive relief under § 504 of the Rehabilitation Act and Title VI. Plaintiff has sought only injunctive relief under § 12188(a)(1) of the ADA as compensatory damages are not available under § 12188(a)(1). Defendant Perimeter argues that plaintiff lacks standing to seek injunctive relief under these statutes because plaintiff has sought injunctive relief only to prevent the public from "further discriminatory conduct." (Def.Perimeter's Mot. to File Supp. Brief [74] at 2 (citing Pl.Brief in Spt. of Mot. for Summ.J. [63] at 37).) Perimeter argues that plaintiff does not seek an affirmative injunction in order to receive prenatal or any other type of medical care from Perimeter. Rather, her challenge is only directed at Perimeter's HIV testing procedures regarding pregnant patients, and plaintiff does not face a "real and immediate threat" of future harm.

In response to Perimeter's arguments, plaintiff contends that because § 12188(a)(1) of the ADA provides only for injunctive relief, and not for compensatory damages, a ruling that injunctive relief is not now available to plaintiff would render meaningless the public accommodation provision of the ADA, as well as § 504 and Title VI's provisions for injunctive relief. Further, plaintiff argues that defendants' discrimination is ongoing and that there is no evidence that Perimeter's HIV testing policies have been altered.

■ The Court concludes that plaintiff lacks standing to assert a claim for injunctive relief under the ADA, § 504, or Title VI. The case law has established three constitutional requirements for standing: (1) the plaintiff must have suffered "an injury in fact," (2) "there must be a causal connection between the injury and the conduct complained of," (3) it must be " 'likely' ... that the injury will be 'redressed by a favorable decision.'" *Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136. The injury in fact must be "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* A plaintiff seeking injunctive relief based upon an alleged past wrong must demonstrate a "real or immedi-

ate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983). In *Lyons,* the plaintiff had brought suit against the City of Los Angeles for injuries sustained when he was subjected to a "chokehold" by police during a traffic stop for a traffic violation. Lyons requested both damages for his injuries and an injunction against the City. *Id.* at 95–97, 103 S.Ct. at 1662. The Supreme Court held that plaintiff had no standing for injunctive relief because he has "no real or immediate threat" that he will be choked again. *Id.* at 111, 103 S.Ct. at 1670. To have established an actual controversy, Lyons would have had to allege that he would have another encounter with the police in the future and also either that (1) all police officers in Los Angeles always choke citizens they encounter or (2) that Los Angeles ordered or authorized the officers to act in this manner. *Id.* at 106, 103 S.Ct. at 1667.

In a more recent case brought under the ADA and § 504, a plaintiff's claims for injunctive relief under the ADA and § 504 were dismissed for lack of standing to seek injunctive relief. *Aikins v. St. Helena Hosp.,* 843 F.Supp. 1329, 1334 (N.D.Cal.1994). Plaintiff, a deaf woman, claimed that the hospital violated the ADA and § 504 because it did not have interpreters on duty twenty-four (24) hours a day and, therefore, plaintiff was unable to communicate with the doctor who was treating her husband for cardiac arrest. *Id.* at 1332. The district court found that plaintiff lacked standing to pursue her claims for injunctive relief because she did not show that she was "likely to use the hospital in the near future, nor that defendants are likely to discriminate against her when she does use the hospital." *Id.* at 1334.

■ This Court finds that plaintiff also has not demonstrated that she is likely to use Perimeter as her health care provider in the near future, nor if she did use Perimeter as her health care provider, that they would discriminate against her. In its Reply Brief, plaintiff asserts "[t]he mere fact that Plaintiff was pregnant and is not presently pregnant, and that Plaintiff may or may not seek or receive services from Defendants in the future, is not dispositive of her rights to in-

junctive relief in this case presently." (Pl. Reply Brief [76] at 6.) This is indeed the dispositive issue. Plaintiff's nonpregnant state is not the reason she lacks standing because she is still in childbearing years and could presumably become pregnant again.[4] Rather, it is the fact that plaintiff has not alleged that she will ever seek services from defendants in the future. While this Court agrees with plaintiff that preventing her from proceeding with her claims for injunctive relief could limit the public accommodations provision of the ADA, other means exist to proceed for injunctive relief. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 50–52, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991) (discussing class certification as means of preserving merits of controversies). Accordingly, this Court dismisses, for lack of standing, plaintiff's claims for injunctive relief under the ADA, § 504, and Title VI. Moreover, because only injunctive relief is available under Title III of the ADA, plaintiff's ADA claims against both Perimeter and Vogt must be dismissed for failure to state a claim upon which relief can be granted.[5]

### C. TITLE VI

 Plaintiff is asserting a claim against only defendant Perimeter for violation of § 2000d of the Civil Rights Act of 1964 ("Title VI"). Because plaintiff's claim for injunctive relief is dismissed for lack of standing, plaintiff's remaining claims under Title VI are for damages and attorneys' fees. In order to recover compensatory damages under Title VI, plaintiff must show "discriminatory intent." *See Guardians Ass'n v. Civil Service Comm'n,* 463 U.S. 582, 603, 607 n. 27, 103 S.Ct. 3221, 3233, 3235 n. 27, 77 L.Ed.2d 866 (1983) (five Justices holding compensatory relief is not available as private remedy for Title VI violations not involving intentional discrimination); *Manecke v. School Bd. of*

*Pinellas Co., Fla.,* 762 F.2d 912, 922 n. 8 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986) (reading of *Guardians Ass'n* reveals at least five Justices would not allow compensatory relief to private plaintiff under Title VI without proof of discriminatory intent).

Title VI provides the following:

No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. To establish national origin discrimination under Title VI, plaintiff must prove (1) she is a member of an ethnic minority; (2) she was denied participation in a federally funded program because of her national origin; and (3) she is otherwise qualified to receive the benefit she claims she was denied. 42 U.S.C. § 2000d. Perimeter does not contest that plaintiff has established that she is from an ethnic minority, as plaintiff's national origin is Nigeria. Perimeter, however, does dispute the second and third prongs. Because plaintiff is moving for summary judgment, she must prove each of these elements as a matter of law.

In arguing that she was denied participation because of her national origin, plaintiff avers the following undisputed facts: that she was told that HIV testing was mandatory in order to receive care by Perimeter and that because she was unwilling to consent to an HIV test, she was denied care from Perimeter. To show the requisite discrimination in violation of Title VI, plaintiff argues primarily that defendant terminated her treatment when she refused the test, whereas it did not terminate the non-African patients who refused to take the HIV test.[6]

In response, Perimeter first argues that because plaintiff "got up from the table and

---

**4.** In fact, plaintiff was pregnant with her second child on March 12, 1993 when she was deposed in this case. (*See* Pl.Reply [76] at 12.)

**5.** Moreover, plaintiff's ADA claim against defendant Vogt would be dismissed even if plaintiff did have standing to sue for injunctive relief because Vogt does not an own, lease or operate a place of public accommodation. *See Aikins,* 843 F.Supp. at 1335 (refusing to permit ADA claim against doctor because he was an independent contrac-

tor of hospital and he had no authority to control hospital policy). For purposes of this Motion, plaintiff has agreed that Vogt is a salaried employee of Perimeter. (Pl.Brief [63] at 3.)

**6.** The parties agree that only one other African patient has ever submitted herself to the care of defendant. This other African patient was not black and this other African patient consented to take the HIV test.

left," after being told that she must submit to an HIV test in order to continue treatment, she left voluntarily and, therefore, was not denied treatment by Perimeter. (Dep. of Vogt at 51.) The Court finds unpersuasive Perimeter's argument. Vogt testified that Dr. Greenberg had said that: "If [plaintiff] refused to be tested, then we couldn't care for her." (Dep. of Vogt at 44.). Accordingly, the Court concludes that Perimeter did deny plaintiff participation in the program.

More persuasively, for purposes of determining the existence of a disputed issue of fact, Perimeter also argues that it refused to treat plaintiff because she refused to comply with prescribed medical treatment. Dr. Greenberg testified that he made the decision to require testing of plaintiff because he requires HIV testing for all his patients. (*Id.* at 2–3, ¶ 5, 8.) Dr. Greenberg also testified he does not treat "noncompliant patients." (*Id.*) In his declaration, Dr. Greenberg states "I cannot recall if Ms. Vogt mentioned Ms. Atakpa's race or African nationality. I did not, however, take these factors into account when I told Ms. Vogt that Ms. Atakpa needed to be tested for HIV." (Def.Perimeter's Brief [72], Declaration of Greenberg at 4, ¶ 8.) Moreover, plaintiff does not dispute that a pregnant patient's HIV status is important in making treatment decisions.

In summary, then, plaintiff argues that defendant terminated her treatment because she is an African immigrant; defendant argues that it terminated her treatment because she refused to comply with defendant's prescribed medical treatment. Accordingly, the Court concludes that a disputed issue of fact exists concerning the reasons for terminating plaintiff's treatment.

In her reply to defendants' response, plaintiff also appears to argue that defendant discriminated on the basis of national origin in asking pregnant women from countries with a higher than normal incidence of AIDS

to take an HIV test. Notwithstanding this argument, plaintiff's complaint appears to focus on the ultimate denial of treatment. That is, the Court does not understand plaintiff to argue that she would have a cause of action had defendant continued treatment when plaintiff refused the HIV test that defendant had suggested as a result of the concededly higher risk for HIV that she bore, as an African immigrant.[7] Because the focus then remains on the reasons for discontinuing treatment, a disputed issue of fact exists. Accordingly, the Court denies plaintiff's Motion for Summary Judgment on the Title VI claim.

## D. REHABILITATION ACT

 Plaintiff is asserting a claim against only defendant Perimeter for violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Because plaintiff's claim for injunctive relief is dismissed for lack of standing, plaintiff's only remaining claim is for damages and attorneys' fees under Section 504. In order to recover compensatory damages under Section 504, plaintiff must show "discriminatory intent." *See Wood v. President & Trustees of Spring Hill College,* 978 F.2d 1214 (11th Cir.1992) (holding that plaintiffs who proceed under disparate treatment theory under Section 504 must prove intentional discrimination to recover compensatory damages).

Section 504 of the Rehabilitation Act provides that:

> [N]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ...

29 U.S.C. § 794(a). Thus, in order to prove discrimination under Section 504, plaintiff must show that she is an individual with a disability;[8] that she was denied participation

---

7. If that is plaintiff's argument, then a doctor would violate Title VI every time he recommended that a Jewish patient take a Tay–Sachs test, that a black patient take a sickle cell anemia test, or, given the current reports of a bubonic plague epidemic in India, that an Indian immigrant take a test for bubonic plague. The Court

does not infer such an extreme argument by plaintiff.

8. Under § 504, an individual with a disability is defined as any person who:

 (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;

in the federally funded program because of her disability; and that she was otherwise qualified for participation in the program. Plaintiff argues that she is an individual with a disability because she was treated as though she might have HIV and because Perimeter refused to treat her further based upon this perceived HIV status. (Pl.Brief [63] at 38, 40.) Finally, she argues that she was an "otherwise qualified individual" because Perimeter admits it treats patients with HIV and would have treated plaintiff regardless of her HIV-status. (*Id.*) Defendant disputes each of these arguments. Because plaintiff is moving for summary judgment, plaintiff must prove each of these elements as a matter of law. This Court finds that plaintiff has failed to prove as a matter of law that Perimeter refused to treat her because of her perceived HIV-status.

There appears to be no dispute that if one is HIV positive, she has a "disability" under § 504. Had plaintiff tested positive for HIV and had Perimeter than refused her treatment as a result of this status, plaintiff would have stated a cause of action as to the first prong of § 504. Those are not the facts, however. Indeed, it is undisputed that Perimeter routinely treats pregnant patients with HIV and that there is no reason to believe that Perimeter would have terminated plaintiff's treatment had she tested positive for the virus.

Because of its willingness to treat plaintiff even if she were HIV positive, this case is readily distinguishable from the case relied on by plaintiff: *Miller v. Spicer*, 822 F.Supp. 158, 164 (D.Del.1993). *In Miller*, a patient came to a hospital emergency room suffering from a lacerated tendon in his foot which required immediate surgery. *Id.* at 160. The doctor refused to treat the patient because the doctor believed the patient was a homosexual and he could not verify the patient's HIV status. *Id.* at 164. Transferred to another hospital by the doctor, the patient suffered permanent damage to his foot as result of the delay in treatment. *Id.* at 161.

The court denied summary judgment for the hospital. *Id.* at 166. Unlike in *Miller*, the evidence is undisputed that Perimeter *did* treat patients with HIV. (*See* Def. Perimeter's Brief, Declaration of Dr. Greenberg, at 3, ¶ 7.)

Plaintiff also argues that it is just as illegal to deny benefits to one who is *perceived* to be disabled as it is to deny benefits to one who is known to be disabled. In this case, however, defendants did not perceive that plaintiff was HIV positive; defendants perceived that they did not know her HIV status. Because there is no dispute that knowledge of a pregnant woman's HIV status furthers the effective medical treatment of that patient and because there is no dispute that defendant would have treated plaintiff even if she were HIV positive, defendants did not violate § 504.

Additionally, this Court notes that Congress may never have contemplated that § 504 would apply to medical decisions about treatment. The stated purposes of § 504 are "(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society, . . . (2) to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities. . . ." 29 U.S.C. § 794(b).

In a case examining the validity of a regulation promulgated pursuant to § 504 regarding the medical treatment of newborn infants, one court observed: "As far as can be determined, no congressional committee or member of the House or Senate ever even suggested that section 504 would be used to monitor medical treatment of defective newborn infants. . . ." *American Academy of Pediatrics v. Heckler*, 561 F.Supp. 395 (D.D.C.1983). Thus, one could argue that § 504 does not even apply in a case such as this. Accordingly, for the above reasons, the Court denies plaintiff's Motion for Summary Judgment on the ADA claim.[9]

---

(ii) has a record of such an impairment, or
(iii) is regarded as having such an impairment.
29 U.S.C. § 706(8)(B).

**9.** Defendants have not moved for summary judgement on this issue. Given the Court's rul-

ing, however, it is not clear what questions of fact remain for a jury's determination. In the pretrial order to be submitted within 30 days, the parties shall identify any disputed issues of fact remaining on this claim.

## E. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff contends that defendants intentionally inflicted emotional distress upon her by intentionally discriminating against her and, thus, causing her physical harm. (Pl. Brief at 49.) Plaintiff's physical harm is identified as losing sleep approximately 60 times, as well as suffering headaches and an upset stomach. (*Id.*) Further, plaintiff argues that the plaintiff and the defendants were in a special relationship—patient and provider—and that this special relationship produces "a character of outrageousness that otherwise might not exist." *Bridges v. Winn–Dixie Atlanta, Inc.*, 176 Ga.App. 227, 335 S.E.2d 445 (1985). Plaintiff argues that while the *amount* of damages should be determined by the finder of fact, this Court should determine, as a matter of law, that defendant is liable for the intentional infliction of emotional distress.

■ This Court concludes that plaintiff has presented insufficient evidence to sustain a claim for intentional infliction of emotional distress. Under Georgia law, the tort of intentional infliction of emotional distress exists when a defendant intentionally or recklessly, through conduct that is extreme and outrageous, causes severe emotional distress to a plaintiff. *Moses v. Prudential Ins. Co.*, 187 Ga.App. 222, 224–25, 369 S.E.2d 541 (1988). Conduct is extreme and outrageous and sufficient to support a claim for intentional infliction of emotional distress if "the citation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'outrageous!'" *Yarbray v. Southern Bell Tel. and Tel. Co.*, 261 Ga. 703, 706, 409 S.E.2d 835 (1991) (citing Restatement (2d) of Torts § 461(1) (1965)).

■ Due to the "justifiable concern" that "causes of action grounded upon emotional distress may give rise to fictitious, inflated or trivial claims unless properly circumscribed," the Georgia courts require that the conduct be "of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Moses*, 187 Ga.App. at 224–225, 369 S.E.2d 541. Moreover, it is a question of law "[w]hether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress." *Yarbray*, 261 Ga. at 706, 409 S.E.2d 835.

■ Assuming that the emotional distress plaintiff suffered was sufficiently severe to sustain this claim, plaintiff has not pointed to any intentional or reckless conduct by any individual Defendant that rises to the requisite level of outrageousness or egregiousness. *See, e.g., Moses*, 187 Ga.App. at 226, 369 S.E.2d 541 (Defendant's threat that plaintiff would "find [his] butt in court or [his] neck broken somewhere" did not, as a matter of law, rise to requisite level of outrageousness and egregiousness.)

Even if plaintiff is correct that defendants have discriminated against her, the conduct that arguably supports a claim for discrimination is not sufficient, standing alone, to sustain a claim of intentional infliction of emotional distress. Plaintiff and defendants were in a special relationship of patient and provider of healthcare; as such, it was the provider's duty to provide the patient with the best possible care. Even if defendants' termination of treatment as a result of plaintiff's refusal to follow defendants' medical advice were deemed to violate Title VI or the ADA, there is no indication that it was done out of any desire to humiliate, frighten or anger plaintiff, or that it rose to the level of outrageousness or egregiousness required to sustain a claim for intentional infliction of emotional distress.

Under plaintiff's articulation of the evidence to support her claim, any plaintiff who is subjected to alleged discrimination and who is understandably upset by that discrimination would also be able to claim intentional infliction of emotional distress. The Court cannot conclude that this is what the Georgia courts intended when they recognized the tort of intentional infliction of emotional distress. *See Moses*, 187 Ga.App. at 224–25, 369 S.E.2d 541 (declaring that defendant's conduct to sustain intentional infliction of emotional claim must have been "so abusive or obscene as naturally to humiliate, embarrass, frighten, or extremely outrage the plaintiff."). Accordingly, this Court denies plaintiff's Motion for Summary Judgment for the

claim of intentional infliction of emotional distress against defendants Perimeter and Vogt.[10]

### F. BREACH OF CONTRACT

Plaintiff argues that summary judgment should be granted on her breach of contract claim. Plaintiff alleges that Perimeter and Vogt entered into a binding contract of treatment with her. According to plaintiff, the terms of the contract were that Perimeter and Vogt would provide professional medical care in connection with plaintiff's pregnancy and delivery of her child; plaintiff would pay for those services as they were billed to her; and plaintiff was not required to take an HIV test as part of her course of treatment. (Pl. Brief [63] at 46.) Furthermore, plaintiff argues she is also entitled to her costs and expenses of litigation under GA.CODE ANN. § 13–6–11 [11] because defendants acted in bad faith in making their contract with plaintiff and have been stubbornly litigiousness in this action. Defendant's alleged bad faith occurred through their requirement that plaintiff be tested for HIV when they had no mandatory HIV testing policy applicable to all patients. Plaintiff argues:

> Defendants had no mandatory HIV-testing policy applicable to all pregnant women, yet they intended from the outset to require Plaintiff to take an HIV test to receive further treatment from Defendants' clinic. Defendants lulled Plaintiff into a false sense of security, examined her, took down her personal medical history, drew her blood for blood tests, scheduled her for and submitted her to ultrasound diagnostics, etc., and took her money, all without any intention of honoring their treatment

commitments to Plaintiff without requiring her to submit to HIV-testing.
(Pl.Brief [63] at 47.)

### 1) Plaintiff's breach of contract claim against Perimeter

Perimeter argues that this claim should be dismissed because any contract arising under the facts of this case was terminable at will. Further, Perimeter contends that any contract arising between plaintiff and Perimeter contained an implied duty of care. Thus, no contract could exclude the proper provision of services and the duty of care may include HIV testing. Perimeter states that it did not act in bad faith because it was attempting to render proper medical care when it insisted upon the HIV test.

 A contract may be formed between a patient and a doctor or hospital. *E.g. Wolfe v. Virusky*, 306 F.Supp. 519, 520 (S.D.Ga.1969) (sustaining malpractice action brought in contract against physician); *St. Joseph's Hospital, Inc. v. Mattair*, 239 Ga. 674, 675, 238 S.E.2d 366 (1977) (sustaining malpractice actions brought in contract against hospital or physician). Although Perimeter is a professional corporation of physicians and not a hospital, Perimeter is like a hospital because it provides care to patients. Furthermore, all the fundamental elements for a contract are present in this case. The elements of contract are: parties able to contract (plaintiff and Perimeter), a consideration moving to the contract (payment and medical services to be rendered), assent to terms, and a subject matter upon which the contract can operate (medical treatment). GA.CODE ANN. § 13–3–1. Thus, this Court

---

10. Although defendants Perimeter and Vogt have not moved formally that this Court dismiss the intentional infliction of emotional distress claim, they have so requested in their briefs. (See Def.Perimeter's Brief [72] at 35, Def.Vogt's Brief [70] at 7, 22.) To grant such a request, the motion should more properly be styled a motion for summary judgment, inasmuch as the Court would have to consider matters other than the pleadings. The Court notes that plaintiff has requested that even if the Court deny her motion for summary judgment that the Court narrow the legal issues as much as possible to avoid an unduly cumbersome trial. (Pl.Brief [63] at 1) Moreover, the issue appears to have been fully briefed by both sides. To avoid jury trial on an issue seemingly devoid of any disputed issue of

material fact, the Court directs the parties in their consolidated pretrial order to show cause why, given the Court's ruling in this Order, the claim for infliction of emotional distress claim should not be denied as a matter of law, prior to trial.

11. GA.CODE ANN. § 13–6–11 provides that:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

finds that a contract was formed between plaintiff and Perimeter.

This contract had no fixed term of duration. Under Georgia law, a contract with no fixed term of duration is terminable at will by either party. *Lineberger v. Williams,* 195 Ga.App. 186, 393 S.E.2d 23 (1990). Arguably, even if the contract were terminable at will, Perimeter would still be liable for breaching the contract by requiring HIV testing if, as plaintiff contends, the contract contained a term that plaintiff was not required to take an HIV test to receive treatment at Perimeter. Plaintiff also asserts that Perimeter is liable for inducing her to enter into the contract in the first place based upon Vogt's statement that HIV testing was not mandatory. Therefore, plaintiff requests the return of any monies which plaintiff paid under the misapprehension that she had secured competent non-discriminatory, medical care.

A dispute of material fact exists as to whether, under the contract between Perimeter and plaintiff, plaintiff was not required to take an HIV test. Both parties must "assent" to the terms of the contract. GA.CODE ANN. § 13-3-1. Vogt admits in her deposition that she did not tell plaintiff on her first visit that she would not be allowed to receive services from Perimeter unless she took an HIV test. (Dep. of Vogt at 37.) Plaintiff, however, never spoke to a physician at Perimeter. Once Vogt consulted with Dr. Greenberg, and told him of plaintiff's refusal to take an HIV test, Dr. Greenberg determined that in order to properly care for plaintiff, an HIV test was necessary. Furthermore, in his affidavit, Dr. Greenberg states that

"it is impossible for a doctor to adequately treat a noncompliant patient and I have dismissed noncompliant patients from my care several times in the past. I believe dismissing noncompliant patients and having them seek care elsewhere is best for the healthcare provider and the patient as well. In this regard, I have discharged other patients from my care for refusing to comply with diagnostic testing. For instance, I discharged a patient in 1992 who

refused to undergo fetal monitoring for her pregnancy which was complicated by hypertension.

(Def.Perimeter's Brief [72], Declaration of Dr. Greenberg at 4, ¶ 9.)

This Court cannot find as a matter of law that a nurse-midwife's statements on the initial visit manifests an assent by Perimeter to a contract term that will dictate the course of treatment by a physician. Ideally, the doctor and patient can mutually agree on a course of treatment. In this case, the doctor and patient did not mutually agree on a course of treatment. Because there is a dispute of material fact as to the terms of the contract between Perimeter and plaintiff, this Court cannot find as a matter of law that Perimeter breached, rather than terminated, the contract.

Regarding plaintiff's claim for costs and attorney's fees under GA.CODE ANN. § 13-6-11, this Court denies plaintiff's motion for summary judgment. Plaintiff has not proven as a matter of law that Perimeter acted in bad faith when it determined that the HIV test was necessary for treatment of plaintiff.

Plaintiff also argues that she was fraudulently induced to enter into the contract with Perimeter because Vogt did not tell her up front that she was required to have HIV testing. Expenses of litigation are permitted when a party is induced to enter into a contract through fraud. *F.N. Roberts Pest Control, Co. v. McDonald,* 132 Ga.App. 257, 260, 208 S.E.2d 13 (1974). In *Roberts,* however, the plaintiff had asserted claim for expenses of litigation because the contract was procured by fraud and deceit based upon false representation. *Id.* at 257, 208 S.E.2d 13. A misrepresentation which amounts to actual fraud must be made "with a knowledge of its falsity." *Id.* at 259, 208 S.E.2d 13. In this case, Vogt asserts that she did not know that an HIV test would be mandatory for plaintiff's treatment at Perimeter until she spoke to Dr. Greenberg. Thus, Vogt did not, as a matter of law "fraudulently induce" plaintiff to enter into a contract of treatment because she did not know that HIV testing would be necessary for plaintiff's treatment.[12]

12. Defendants have also "requested" in their response to the motion for summary judgment that

the Court deny plaintiff's claims for costs and

### 2) Plaintiff's breach of contract claim against Vogt

■ Vogt asks the court to dismiss plaintiff's claim for breach of contract because she, individually, did not have a contract with plaintiff and, therefore, could not have committed any breach. Vogt argues that one of the essential elements of a contract, consideration, is not present because she did not receive any consideration from the plaintiff. Vogt did not earn any more or less whether or not the plaintiff was a patient at Perimeter since she was a salaried employee. Vogt also asserts that there is no evidence in this case that she acted in bad faith. The decision to require the HIV test was made by Dr. Greenberg, one of the Perimeter physicians. Additionally, the decision to require the HIV test was based on the belief that an HIV test was necessary to provide the best care to the plaintiff and her unborn infant.

In reply to Vogt's argument that she did not have a contract with plaintiff, plaintiff argues that as a registered nurse under Georgia law, "whenever [Vogt] proceeds to render care to one of her patients, and whenever the patient provides informed consent to treatment by her, she enters into a contract for the provision of professional services to that patient which the patient can enforce against the particular practitioner in the same fashion as contract actions against doctors, lawyers, and similar professionals." (Pl.Reply [73] at 21.)

Plaintiff cites cases permitting suit against doctors and hospitals for breach of contract. *E.g. Wolfe v. Virusky,* 306 F.Supp. 519, 520 (S.D.Ga.1969) (sustaining malpractice action brought in contract against hospital or physician); *St. Joseph's Hospital, Inc. v. Mattair,* 239 Ga. 674, 675, 238 S.E.2d 366 (1977) (sustaining malpractice actions brought in contract against hospital or physician); *Ballard v. Rappaport,* 168 Ga.App. 671, 310 S.E.2d 4

(1983) (involving breach of contract claim against physician); *Cartwright v. Bartholomew,* 83 Ga.App. 503, 64 S.E.2d 323 (1951) (involving breach of contract suit against physician); *Scott v. Simpson,* 46 Ga.App. 479, 167 S.E. 920 (1933) (involving breach of contract claim against physician); *Stokes v. Wright,* 20 Ga.App. 325, 326, 93 S.E. 27 (1917) (permitting patient to sue physician either in contract or in tort). Plaintiff, however, refers this court to no case where a breach of contract cause of action has been asserted against a nurse or nurse-midwife who is an employee of a hospital or professional corporation of physicians.[13]

This Court does not find that Vogt entered into a contract to provide care to plaintiff as one of the essential elements of contract, consideration, is not present. The Court envisions broad ramifications from the result that plaintiff would have this Court adopt. In particular, plaintiffs could proceed with breach of contract theories against the ultrasound technician at Perimeter or the nurse who takes their medical history for their chart. Without some precedential authority, this Court cannot find that a contract existed between a patient and a nurse-midwife employee of a professional corporation.[14] Because no contract existed between Vogt and plaintiff, Vogt accordingly could not breach a non-existent contract, nor be found liable under GA.CODE ANN. § 13–6–11. Accordingly, this Court denies plaintiff's Motion for Summary Judgment on the breach of contract claim.[15]

### III. DEFENDANT PERIMETER'S MOTION TO AMEND ITS RESPONSE OR IN THE ALTERNATIVE TO WITHDRAW ITS RESPONSE TO REQUEST NO. 178

■ Defendant Perimeter has moved to amend its response to all of Plaintiff's First Requests for Admission [77–1],[16] or, in the

---

attorney's fees pursuant to GA.CODE ANN. § 13–6–11. Defendants may renew this request at the time of trial.

13. Further, the cases plaintiff cites are in the context of malpractice. No malpractice by Vogt or Perimeter is alleged in this case.

14. This Court does not decide what the outcome would be if Vogt were an independent contractor or received payment by Perimeter based on the number of patients she sees. Plaintiff has agreed

for purposes of this Motion that Vogt is a salaried employee of Perimeter. (Pl.Brief [63] at 3.)

15. Defendant Vogt "requested" that this Court dismiss the breach of contract claim against her. (See Def. Vogt's Brief at 7, 22.) The parties should comply with the directives in note 10, *supra,* in their treatment of this issue.

16. Perimeter asks this Court to permit it to add the language "Perimeter's responses to Plaintiff's

Alternative, to Withdraw its Response to Request No. 178 of Plaintiff's First Request for Admission [77–2]. Plaintiff's Request for Admission No. 178 asked Defendants to admit that Perimeter patient # 5044, one of Dr. Greenberg's patients, had refused to take an HIV test. Perimeter responded "Admitted." Plaintiff has used Admission No. 178 to argue that Perimeter has admitted as a matter of law that patients have refused HIV testing and been tested against their will. (Pl.Mot. for Summ.J. [63] at 14; Pl.Reply to Perimeter [75] at 7, 23.) Perimeter argues that because Dr. Greenberg will testify that patient # 5044 did in fact consent to the HIV test,[17] the unqualified construction proposed by plaintiff renders Admission No. 178 in conflict with uncontroverted testimony. Perimeter further notes that plaintiff is attempting to obscure the matter being admitted because Perimeter has never stated that the patient actually refused an HIV test. Instead, Perimeter has merely admitted that the records for this patient indicated a refusal. Plaintiff argues that Admission No. 178 regarding Patient # 5044 shows the falsity of defendants' position that plaintiff was the only clinic patient who ever refused to take an HIV test, and thus plaintiff was the only patient who was denied treatment because she would not be tested.

■ Rule 36(b) permits amendment or withdrawal when (1) "the presentation of the merits of the action will be subserved thereby" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." FED.R.CIV.P. 36(b). The district courts may exercise considerable discretion in permitting parties to amend or withdraw admissions. *Farr Man & Co., Inc. v. M/V Rozita,* 903 F.2d 871, 876 (1st Cir.1990). The courts have permitted the withdrawal of an admission when the record indicates that the admission is no longer true and/or it was made pursuant to a faulty assumption. *Farr,* 903 F.2d at 877, *Howard v. Sterchi,* 725

F.Supp. 1572, 1577 (N.D.Ga.1989) (O'Kelley, C.J.), *aff'd,* 12 F.3d 218.

This Court finds that this admission is not an untruth; however, the presentation of this admission without clarification and without permitting Dr. Greenberg's testimony will impede the trier of fact from reaching the truth. Further, plaintiff has not shown prejudice of the kind envisioned by Rule 36(b). *See Howard,* 725 F.Supp. at 1576 (explaining that prejudice under the rule "relates to the difficulty a party may face in proving its case"—such as the unavailability of key witnesses). In this case, Dr. Greenberg will presumably be present at trial and plaintiff will have the opportunity to question him regarding Patient # 5044, Admission No. 178, and his affidavit.

Accordingly, this Court will permit Perimeter to amend its answer to Plaintiff's First Request for Admission No. 178 with appropriate language or to withdraw the admission. The Court will determine the appropriate wording at the pretrial conference. Plaintiff will, of course, be able to cross-examine defendant Greenberg on the answer and amended answer.

## CONCLUSION

Defendant Perimeter OB–GYN's Motion for Leave to File Supplemental Brief [74] is **GRANTED.** Plaintiff's Motion for Summary Judgment [63] is **DENIED.** Plaintiff's Motion for Partial Summary Judgment [63–2] is **DENIED.** Plaintiff's claims pursuant to § 12188(a)(A) of the ADA against both defendants Perimeter and Vogt are dismissed for lack of standing. Defendant Perimeter's Motion to Amend its Response and/or to Withdraw its Response to Request No. 178 [77] is **GRANTED IN PART AND DENIED IN PART.**

Plaintiff has indicated in her pleadings her willingness to withdraw her claims based upon 42 U.S.C. § 1981 and 42 U.S.C. § 1982 against Perimeter and Vogt and her § 504

Request for Admission are based only upon information contained in Perimeter's patient files listed on Exhibit 'A' " and "except as expressly admitted herein, Perimeter denies each and every matter of Plaintiff's First Request for Admissions" for each and every admission.

**17.** (*See* Def.Reply Brief [72] at Aff. of Greenberg, at 5 ¶ 10.)

and Title VI claims against Vogt. Plaintiff, however, seeks dismissal without prejudice. The Court would be very reluctant to permit dismissal without prejudice. This case is almost three years old and the discovery has been extensive and prolonged. Plaintiff should be ready at this point to proceed or to dismiss. At some point, there must be finality in litigation. Accordingly, the Court denies plaintiff's request to dismiss these claims without prejudice. Plaintiff may renew the motion at the pretrial conference.

Both parties are hereby directed to file the Consolidated Pretrial Order within thirty (30) days of receipt of this order. In that pleading, the parties shall set out, as to each claim, the disputed issues of fact remaining on the claim.

SO ORDERED.