76063. MOSES v. PRUDENTIAL INSURANCE COMPANY
OF AMERICA et al.
(369 SE2d 541)

BIRDSONG, Chief Judge.

This is an appeal from the order of the superior court judge granting appellees' motion for summary judgment.

Appellant worked for appellee insurance company for approximately two years, and appellee Huggins was his supervisor. During his employment with appellee insurance company, appellant sold a Prudential whole life, payroll deduction life insurance policy, referred to as "Pru-Pep," to a nursing home. Appellant quit work for appellee company and went to work as an independent agent for another insurance company.

Subsequently, the appellant contacted the nursing home administrator, informed her of his new employment, and advised her that another Prudential employee was the nursing home's new servicing agent. Appellant also informed the administrator that the Pru-Pep policy would still meet the needs of about 95 percent of the nursing home's employees, but that approximately five people would receive a better benefit from the insurance appellant was now selling. Appellant agreed to contact the administrator "the first part of next week"

regarding the new insurance.

About two weeks later, appellee Huggins called the appellant and left the following message on the latter's telephone recorder: "Mark, this is Jeff. I just want to tell you not to screw around with the Prudential clients again, and especially like the trick you tried to pull on your Pru Pep case, or you are going to find your butt in court or your neck broken somewhere." Appellant returned appellee Huggins' call within the next fifteen minutes, and discussed the issue of contacting clients but did not discuss the threat and no mention was made of it. Appellant testified that he did not thereafter contact the clients as he did not want his neck broken, and that he quit selling life insurance that very day as a result of the phone call. Appellant also asserts that because of the phone call he was in "fear of his personal safety," and that he would look around when he went to his car for fear that someone might be there.

Appellant later met appellee Huggins in a bank and the two men shook hands and had a short conversation before appellant could get away. Another time appellant saw appellee Huggins in a restaurant and left before the latter saw him and started any trouble. Appellant admitted that at the time of his phone call he was five miles away from appellee Huggins. During his deposition, appellant allegedly testified in response to two questions that because appellee Huggins was five miles away there was nothing that Huggins could do to him; however, in a subsequent errata sheet, appellant attempted to modify the effect of his deposition responses to reflect that he did believe Huggins could do something to him. Appellant, in a Caveat of Defendant's Statement of Material Facts, subsequently asserted that his response to the two questions should have been that appellee Huggins "at the time of the conversation had no apparent present ability to injure [the appellant] and [the appellant] did not fear injury at that moment." Further, the appellant testified that he "was more frightened that [appellee Huggins] would have [the threat] done" by someone else, and that this was his "greatest fear." Although the appellant tacitly admitted to knowing of no instances where appellee Huggins had hired or used someone else to do anything to anybody else, he knew that "he does whatever it takes to get what he wants."

Appellant brought suit against appellee Prudential Insurance Company and its alleged agent, servant and employee appellee Huggins on the grounds that the conduct of the appellee Huggins in leaving the message on appellant's recording machine both constituted "a wilful infliction of emotional distress" and an "intrusion into [appellant's] reasonable expectations of privacy."

Appellant enumerates as error that the trial judge erred in granting appellees' motion for summary judgment, in that the words of appellee Huggins constituted an actionable wrong. *Held*:

It is a well-established general rule in this state that in order to sustain a cause of action for the tort of intentional inflection of emotional distress, the defendant's actions must have been so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff. *Crowe v. J. C. Penney, Inc.*, 177 Ga. App. 586 (1) (340 SE2d 192); *Anderberg v. Ga. Elec. Membership Corp.*, 175 Ga. App. 14 (3) (332 SE2d 326); *Sossenko v. Michelin Tire Corp.*, 172 Ga. App. 771, 772 (324 SE2d 593). However, our courts have also recognized that "there is authority to sanction a recovery in tort where the defendant has wilfully and wantonly caused emotional upset to the plaintiff through the use of abusive or obscene language." *Tuggle v. Wilson*, 248 Ga. 335 (2) (282 SE2d 110); *Greer v. Medders*, 176 Ga. App. 408 (336 SE2d 328). Unfortunately, little guidance is provided in these opinions regarding the circumstances under which this latter cause of action could be properly applied. We believe that this cause of action grounded on wilful or wanton conduct does not give rise to any new type of tort heretofore unrecognized, rather it is but a practical application of the well-reasoned tort principle, subsequently expressed in *Hamilton v. Powell, Goldstein, Frazer &c.*, 252 Ga. 149, 150 (311 SE2d 818), that "reckless and wanton disregard of consequences may evince an intention to inflict injury." Thus, as in the case of severe mental distress caused by intentional infliction of injury, " 'a reckless disregard of the rights of others, equivalent to an intentional tort [committed] by the defendant' " will give rise to a cause of action to the injured party for the mental pain and anguish, that is, the mental distress, suffered therefrom. See *Hamilton*, supra at 150; see also Prosser & Keeton on Torts (5th ed.), Ch. 2, § 12, p. 64 ("There are, however, a few cases which indicate that liability for extreme outrage is broader and extends to situations in which there is no certainty, but merely a high degree of probability that the mental distress will follow, and the defendant goes ahead in conscious disregard of it. This is the type of conduct which commonly is called wilful or wanton or reckless.") The emotional distress tort is "still in a stage of development, and the ultimate limits of this tort are not yet determined." Restatement (Second) of Torts, Ch. 2, Emotional Distress, § 46 (1), comment c. However, "[t]he cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous." Id. at comment d. In view of these factors, coupled with the court's justifiable concern that causes of action grounded upon emotional distress may give rise to fictitious, inflated or trivial claims unless properly circumscribed, we believe it appropriate to graft a threshold requirement upon cases involving mental distress generated by willful or wanton conduct that is consistent with those traditional tort principles utilized in similar cases involving intentional infliction of emotional distress causes of action. Accordingly, we hold that to

sustain a cause of action for the emotional distress tort of wilfully and wantonly causing emotional distress through the use of abusive or obscene language, the defendant's conduct must have been so abusive or obscene as naturally to humiliate, embarrass, frighten, or extremely outrage the plaintiff. See *Bradley Center v. Wessner*, 250 Ga. 199, 202 (296 SE2d 693) ("we have not created a 'new tort,' rather we have applied our traditional tort principles of negligence" to the situation confronting us).

Assuming, without deciding, that appellant's complaint, including the allegation that appellee Huggins' "words and acts constituted a wilful infliction of emotional distress," was adequate to place appellees on notice of the claim being asserted, whether based on either the intentional infliction or the wilful and wanton infliction of emotional distress, we nonetheless find that the trial judge did not err in granting appellees' motion for summary judgment.

Moreover, we believe it is not enough that appellant's conduct in a given situation is intentional or that it is wilful and wanton. In order to warrant recovery under either theory, the conduct also must be of such serious import as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness. *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 229-230 (335 SE2d 445); *Thomas v. Ronald A. Edwards Constr. Co.*, 163 Ga. App. 202 (2) (293 SE2d 383). Cf. *Anderberg*, supra at 16 (3) (" 'the record . . . reveals no actions . . . that amount to "the kind of egregious conduct necessary" ' "); *Sossenko*, supra at 773 (the statements uttered could not have foreseeably resulted in the mental distress complained of because "they do not rise to the requisite level of outrageousness and egregiousness"). The Restatement (Second) of Torts, supra at § 46 (1), comment d, after discussing the generally recognized requirement for extreme and outrageous conduct as a prerequisite for liability in emotional distress tort cases observes that: "[t]he liability clearly does not extend to mere insults, indignities, *threats*, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of . . . filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt." (Emphasis supplied.)

Considering the totality of the circumstances of this case, including the language used in the offensive message, the means by which the message was delivered to plaintiff and the relationship of the parties, we find that the threatening and offensive language used in this instance could not have reasonably and foreseeably resulted in the

mental distress of which appellant complains because the offending message did not, as a matter of law, rise to the requisite level of outrageousness and egregiousness. *Sossenko*, supra at 773.

Further, as recognized in *Bridges*, supra at 230, "[t]he *severity* of the emotional distress allegedly produced by the conduct [of the defendant] is also a factor in determining liability for [mental distress] tort. The Restatement (Second), § 46 (1), comment j, states as follows: 'Emotional distress . . . includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises. . . . *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.* . . . The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. . . . *It is for the court to determine whether on the evidence severe emotional distress can be found. . . .*' " (Emphasis supplied.) We find as a matter of law that in this case appellant's alleged emotional distress does not meet the above severity requirement. In view of the totality of the circumstances surrounding the incident, a reasonable person could endure the degree of distress generated by the offending message.

Appellee, as the party moving for summary judgment on the grounds that the opposing party has no valid claim, has the burden of producing evidence which negates that claim. *Sossenko*, supra at 773. For each of the reasons above discussed, we conclude that appellee has sustained its burden of showing the absence of a genuine issue of material fact as to the appellant's complaint for either the intentional or the wilful and wanton infliction of emotional distress.

Appellant's enumeration of error is so broadly worded that it might also encompass an assertion that the original complaint also averred an "actionable wrong" for invasion of privacy. However, as appellant has failed to support such an assertion by argument or citation of authority in his brief, this court is presented with "nothing . . . to consider" and this issue is deemed to have been abandoned. *Craft v. Hosp. Auth. of Hall County*, 173 Ga. App. 444 (1) (326 SE2d 590); Court of Appeals Rule 15 (c) (2).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED MAY 23, 1988.

*Scott Walters, Jr.,* for appellant.

*Robert A. Barnaby II, Cheri D. McLeod,* for appellees.