**Thomas D. WILSON, Jr., Plaintiff,**

v.

**GEORGIA–PACIFIC CORPORATION, Defendant.**

**No. 1:96–CV–1840–JEC.**

United States District Court, N.D. Georgia, Atlanta Division.

March 31, 1998.

Milton Dale Rowan, William Nathan Hershman, Rowan & Neis, Atlanta, GA, for Plaintiff.

Robert Harmon Buckler, Alston & Bird, Atlanta, GA, for Defendant.

## ORDER

CARNES, District Judge.

This case is presently before the Court on Defendant Georgia Pacific Corporation's (hereinafter "Georgia Pacific") Motion for Summary Judgment [16]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's motion should be **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Plaintiff, Thomas D. Wilson, was hired by Great Northern Nekoosa Corporation in 1974 to work at its Cedar Springs paper mill. (Wilson Dep. at 7, 16.) In 1990, Georgia Pacific acquired Great Northern, took over operations at the Cedar Springs mill, and plaintiff became a Georgia Pacific employee. (*Id.* at 16.) Throughout the period of plaintiff's employment with Georgia Pacific he was classified as an Electrical and Instrument Mechanic (hereinafter "E & I Mechanic"). (Wilson Dep. at 17, 19.)

The Cedar Springs mill is divided into four units: the powerhouse, paper machine, pulp mill, and wood yard. (Roper Dep. at 17.) Each E & I Mechanic is generally assigned to work exclusively in one of these units. (*Id.*) Plaintiff was assigned to the paper-machine unit. (*Id.*) The role of the E & I Mechanics collectively is to maintain and repair all of the electrical machinery, equipment, and instruments throughout the mill. (Pl.'s Resp. to Statement of Material Facts [20] at ¶ 4.) More specifically, the E & I Mechanic position consists of working on valves, motors, controllers, computer based equipment systems, transmitters, hotboxes, headboxes, rewet showers, profile managers, air conditioners, house cranes, attenuators, felt guides, and lights. (Def.'s Statement of Material Facts [16] at ¶ 4 (citations omitted).) Though there were literally hundreds of such tasks that the E & I Mechanics performed, the goal at the mill was that through "cross training" each individual mechanic, he or she would be able to competently perform as many of these tasks as possible. By working towards this goal, defendant would achieve greater flexibility with regards to assignments. (Anderson Dep. at 50; Wilson Dep. at 286–87.)

In January of 1995, plaintiff's tenure as an E & I Mechanic came to an end. Plaintiff was hospitalized and diagnosed with hypertrophic obstructive cardiomyopathy, a permanent heart condition characterized by abnormal thickening of the muscular walls of the heart. (Pl.'s Resp. to Mot. for Summ. J. [20] at 1.) Such thickening results in a decrease in the "cardiac performance" of the afflicted individual, thereby decreasing the amount of blood pumped to the organs of the body. (*Id.* at Ex. 1.) This condition produces symptoms such as shortness of breath, chest pain, heart palpitations, lightheadedness, dizziness, and susceptibility to sudden death. (*Id.*) These symptoms result in marked limitations in physical activities such as walking at more than a slow pace or on an incline, running, climbing, pulling, pushing, squatting, bending, lifting, and exposure to temperature extremes. (*Id.*) Due to these limitations, plaintiff's cardiologist, Dr. Brooks, instructed plaintiff that he could return to work, but that he should not lift over 30 pounds, expose himself to temperature extremes, or engage in activities that require physical exertion other than those of daily living. (Wilson Dep. at Exs. 3 & 5). Dr. Brooks went on to state that plaintiff *"should be able to work in a climate controlled environment at a desk job without difficulty,"* (Wilson Dep. at Ex. 5 (emphasis added)), and told plaintiff that this was the only sort of job that he would permit him to do. (Wilson Dep. at 175.)

Nonetheless, in February of 1995 plaintiff sought to return to his former position at the Cedar Springs mill. (Pl.'s Resp. to Mot. for Summ. J. [20] at 1.) However, rather than allowing plaintiff to return to his former position, defendant placed him on disability leave. (Wilson Dep. at 123.) While plaintiff was on

disability leave, Vicki Spurgeon, defendant's Director Of Human Resources at the Mill, instructed Robert Garlington, the E & I Superintendent (head of the electrical department at the mill), to complete a "job requirements" form for the E & I Mechanic position. (Garlington Dep. at 17.) Garlington, after consulting with a supervisor and a foreman, completed a form that was intended to describe the E & I Mechanic position for all such employees at the Cedar Springs mill, and not plaintiff specifically. (*Id.* at 23.)

After completing this form, Garlington submitted it to the mill's human resources department. It was then sent to Dr. Brooks on February 20, 1995. After reviewing the form, Dr. Brooks concluded that plaintiff should not engage in many of the listed activities. Garlington, Spurgeon, and Ted Hartley, a Manager of Employee Relations at the mill, therefore concluded that plaintiff should not be permitted to return to his job as an E & I Mechanic. (Garlington Dep. at 36–37.)

Over the next few months plaintiff attempted to transfer to different positions within the mill by relying on individuals at the mill to keep him informed of openings. (Wilson Dep. at 169–170.) Some of these positions, for which plaintiff was not sure he was qualified (Wilson Dep. at 170), were filled by other individuals, while other positions were deemed incompatible with plaintiff's limitations, an assessment with which plaintiff agreed. (Wilson Dep. at 166.)

In August of 1995, plaintiff, Spurgeon, Hartley, Garlington, and Fred Anderson, plaintiff's former supervisor, explored carving out a niche from plaintiff's previous E & I Mechanic position calibrating and repairing instruments in the instrument shop at the mill. (Wilson Dep. at 183.) Plaintiff had repaired instruments prior to his illness. In fact, according to plaintiff's foreman, plaintiff had always done anything asked of him, but "mostly [had taken] care of the profile manager and [had done] a lot of instrument work." (Anderson Dep. at 8.) Plaintiff could perform both such duties in the future, even with his limitations. A new work requirements form was prepared for this position, and Dr. Brooks, as well as a doctor frequent-

ly utilized by defendant, concluded that plaintiff could physically perform this position. (Garlington Dep. at Ex. 3.) Defendant, however, did not offer plaintiff the opportunity to return to the mill in this capacity. (Pl.'s Resp. to Mot. for Summ. J. [20] at 13 (citations omitted).)

After being informed that this position would not be made available to him, plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). The EEOC issued plaintiff a right to sue letter and plaintiff initiated this action in which he alleges that defendant impermissibly discriminated against him in violation of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101 *et seq.*, the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and that defendant subjected him to the Intentional Infliction of Emotional Distress.

## *DISCUSSION*

### I. Summary Judgment Standard

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir. 1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[1] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548, *quoting* FED.R.CIV.P. 56(e). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element material to that party's case so as to create a genuine issue for trial.

## II. Intentional Infliction of Emotional Distress

 Plaintiff concedes that the evidence fails to establish his claim for intentional

infliction of emotional distress. (Pl.'s Resp. to Mot. for Sum. J. [20] at 2 n. 1.) In order to establish a claim for intentional infliction of emotional distress in Georgia, a plaintiff must show that the "defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass, or frighten plaintiff." *Sossenko v. Michelin Tire Corp.*, 172 Ga.App. 771, 772, 324 S.E.2d 593 (1984) (citation omitted). The resulting distress caused by such actions must be "so severe that no reasonable man could be expected to endure it." *Moses v. Prudential Ins. Co.*, 187 Ga.App. 222, 226, 369 S.E.2d 541 (1988), *quoting* RESTATEMENT (SECOND) OF TORTS § 46(1) cmt j. In Georgia, disadvantageous employment actions standing alone cannot serve as the basis for the tort of intentional infliction of emotional distress. *Clark v. Coats & Clark*, 990 F.2d 1217, 1229 (11th Cir.1993). Defendant's motion for summary judgment as to plaintiff's intentional infliction of emotional distress claim is thus granted.

## III. ERISA

Plaintiff concedes that defendant is entitled to summary judgment as to his claim that he was discriminated against in violation of ERISA. (Pl.'s Resp. to Mot. for Summ. J. [20] at 2 n. 1.) Accordingly, defendant's motion for summary judgment as to this claim is granted.

## IV. Americans with Disabilities Act

 Plaintiff claims that defendant discriminated against him in violation of the ADA, 42 U.S.C. § 12101 et seq., by refusing to reinstate him as an E & I Mechanic. Plaintiff contends that he is entitled to return to this position to perform only those tasks he is capable of physically performing. To establish that this claim is actionable under the ADA, plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual; and (3) he was discriminated against because of such disability. *Harris v. H & W Contracting Co.*, 102 F.3d 516 (11th Cir.1996). Defendant contends that plaintiff is unable to satisfy any

---

1. The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

of these elements. (Def.'s Mot. for Summ. J. [16] at 13.)

## A. Is Plaintiff Disabled Under the ADA?

Plaintiff must first show that he is disabled. Under the terms of the ADA, one is considered to have a disability if he or she: (1) has a physical or mental impairment which substantially limits one or more of that person's major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff contends that he is disabled under each of these definitions of disability. (Pl.'s Resp. to Mot. for Summ. J.[20] at 15.)

### 1. Does plaintiff have a physical impairment that substantially limits one or more of his major life activities?

There is no dispute that plaintiff suffers from a serious and permanent heart condition. Defendant argues, however, that plaintiff's heart condition does not rise to the level of a disability. In order to meet the definition of disabled, an individual must have an impairment that substantially limits one or more major life activities.

■ In this case, plaintiff clearly has an impairment. The regulations define impairment as "any physiological disorder or condition ... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine." 29 C.F.R. § 1630.2(h)(1). A heart disease, which by its nature affects the afflicted individual's cardiovascular system, is an impairment for purposes of the ADA. *See Knapp v. Northwestern Univ.*, 101 F.3d 473, 478 (7th Cir.1996), *citing* 34 C.F.R. § 104.3(j)(2)(i)(A).

■ An impairment rises to the level of a disability when it substantially limits plaintiff in a major life activity. In this regard, defendant argues primarily that plaintiff is not limited in the major life activity of working.

(See Def.'s Mot. for Summ. J. [16] at 14–16.) Courts are instructed, however, not to address whether an individual is limited in the activity of working, before first examining whether this person is limited in another major life activity. 29 C.F.R. Pt. 1630, App. § 1630.2(j).[2] Only after determining that the individual is not substantially limited in a major activity other than working shall the court then proceed to determine whether the impairment substantially limits the activity of working.

In this case, plaintiff argues that his impairment substantially limits him in both the activity of working, as well as other major life activities. As to the latter, major life activities are those basic activities that the average person in the population can perform with little or no difficulty. 29 C.F.R. Pt. 1630, App. § 1630.2(i). These activities may include such tasks as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). Arguing that he is substantially limited in major life activities, plaintiff notes that his impairment causes him to experience fatigue, shortness of breath and multiple physical limitations. For example, plaintiff cannot walk at more than a slow pace; he cannot run; he cannot climb; he cannot lift more than 30 pounds; he cannot be exposed to heights or to extreme heat or cold; and he has marked limitations in his ability to breath.

■ Plaintiff also argues, persuasively, that even were he not limited in other major life activities, he is limited in the major life activity of working. Specifically, plaintiff contends that he has been "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." (Pl.'s Resp. to Mot. for Summ. J. [20] at 18–19.) *See* 29 C.F.R. § 1630.2(j)(3)(i).

The Court finds merit in plaintiff's argument and concludes that defendant has not persuaded the Court that defendant is enti-

**2.** All citations are to the 1997 edition of the Code of Federal Regulations.

tled to summary judgement on the issue of whether plaintiff is disabled.[3]

### 2. Did defendant "regard" plaintiff as disabled?

Plaintiff also argues that· he is disabled under the third definition of disability: specifically, that defendant regarded him as disabled. 42 U.S.C. § 12102(2)(C). The Court finds plaintiff's argument to be without merit as to this part of his claim and grants defendant's motion for summary judgment to the extent that plaintiff is claiming that defendant regarded him as disabled, for purposes of the ADA.

In this case, plaintiff informed defendant that plaintiff had a serious heart condition that prevented plaintiff from performing many of the duties that his job responsibilities entailed. Moreover, plaintiff provided medical documentation confirming the existence of this limiting impairment. Acting on the prompting of plaintiff, defendant no longer allowed plaintiff to perform these potentially dangerous duties. Indeed, had defendant insisted that plaintiff perform these duties, it is undisputed that plaintiff would have had to refuse defendant's demands.

These facts do not establish that defendant "regarded" plaintiff as disabled for purposes of triggering the ADA. The applicable regulations indicate that there are three ways by which a plaintiff may demonstrate that he has been regarded as disabled.[4] First, the individual may have an impairment that does not substantially limit him in a major life activity, but the employer may treat the impairment as creating such a limitation. 29 C.F.R. § 1630.2(*l*)(1). The example given by the regulations for the above conduct is an employee who has controlled high blood pressure that is *not* substantially limiting, but which impairment the employer, out of "unsubstantiated fears" that the employee may suffer a heart attack, treats as if it is substantially limiting by reassigning the employee to less strenuous work. 29 C.F.R. Pt. 1630, App. § 1630.2(*l*).

Second, the individual may have an impairment, which is substantially limiting only because of adverse attitudes toward the impairment. 29 C.F.R. 1630.2(*l*)(2). The example for this prong is an employee who has a prominent facial scar or disfigurement or who has "a condition that periodically causes an involuntary jerk of the head" but who is not otherwise limited in a major life activity. *Id.* Under the regulation "discrimination" against this employee by the employer because of the negative reactions of customers to the disfigurement of jerking of the head means that the employer has "regarded" the employee as disabled. 29 C.F.R. Pt. 1630, App. § 1630.2(*l*).

Third, an employer may "regard" an individual as disabled if the individual is, in fact, free from impairment, but the employer erroneously believes that the employee has such an impairment and treats him consistently with that erroneous belief. 29 C.F.R. 1630.2(*l*)(3). The example given for this prong is an employer who discharges an employee as the result of a false rumor that the employee is HIV positive. Under this example, the employee is not actually disabled, because he does not have the rumored impairment,[5] but the employer treats the employee as if he were disabled. 29 C.F.R. Pt. 1630, App. § 1630.2(*l*).

---

**3.** Although it does not matter, given the ruling on the question of plaintiff's ongoing disability, the Court assumes that plaintiff also has a "record of an impairment," pursuant to 42 U.S.C. § 12102(2)(B).

**4.** The Court assumes, for purposes of this discussion, only, that these EEOC regulations capture the intent of the statute. This assumption notwithstanding, some of the interpretive regulations are open to debate. *See, e.g.* n. 5, *infra.* Indeed, the confusion inherent in this particular regulation guarantees much litigation for years to come.

**5.** The EEOC chose a poor example for this prong of the regulation, as it is not settled whether HIV status, alone, is an impairment, much less a disability. *Compare Runnebaum v. NationsBank,* 123 F.3d 156 (4th Cir.1997) (*en banc*) ("plain meaning of 'impairment' suggests that asymptomatic HIV infection will never qualify as an impairment"), *with Abbott v. Bragdon,* 107 F.3d 934, 939 (1st Cir.), *cert. granted in part,* ——— U.S. ———, 118 S.Ct. 554, 139 L.Ed.2d 396 (1997) ("HIV-positive status, *simpliciter,* whether symptomatic or asymptomatic, comprises a physical impairment under the ADA").

The central theme in two of these examples [6] is an employer's inaccurate belief that an employee can *not* perform his job. Under the above examples, the employer's perception is faulty either because the employee has no condition at all, but the employer inaccurately believes the former to suffer from an impairment (Example 3), or because the employee has a physical impairment, but the employer *inaccurately* believes this impairment to limit the employee's ability to perform his job. (Example 1).

In this case, however, there was nothing faulty or inaccurate about defendant's perception that plaintiff had a condition that prevented him from performing many of the duties of his position. Indeed, it was plaintiff, himself, who informed defendant that he suffered from a serious heart condition and could no longer perform many of his previous duties. Accordingly, while, as a literal matter, defendant perceived plaintiff as unable to perform previous job duties because of his heart condition, defendant's perception was an accurate one and was concurred in by plaintiff, himself. *See McCollough v. Atlanta Beverage Co.*, 929 F.Supp. 1489, 1497–98 (N.D.Ga.1996) (Carnes, J.).

This would be a different case had plaintiff and his doctor insisted to defendant that plaintiff could still perform his regular duties, but nonetheless defendant refused to allow plaintiff to perform those duties as a result of the diagnosis of heart disease. In such a scenario, which would fit most closely with the regulation's first example, the plaintiff would have a stronger argument that the employer regarded him as disabled.[7] In a

---

6. Example 2 reflects a different concern than Examples (1) and (3). In Examples (1) and (3), the employer acts under a *mistaken* belief that the employee cannot perform his duties or that the employee is impaired. Example 2, however, seems to recognize that the employee's physical condition may well affect his ability to perform his job, in that the latter's disfigurement or involuntary head jerking could affect his success at a sales type of job. (Note that the regulation focuses on the actual negative reaction of customers, not the employer's inaccurate perception about that reaction.) Nevertheless, the EEOC has recognized, as covered by this prong of the ADA, the situation in which an employer allows the actual, negative attitudes of its customers toward a salesman to affect the employer's treatment of this employee.

A literal reading of this interpretative example presumably suggests that a disfigured employee who performs poorly as a salesman would be "regarded" as disabled if the employer took into account, in his treatment of the employee, the negative reaction of customers to this condition. Query, however: would this employee otherwise be a "qualified" salesman, if, in fact, the employee did not make his sales quota, which would be an essential function of the job, but the suspected reason for this inability is the negative reaction he receives from customers? The EEOC's example arguably collapses the determination whether a person is disabled with a separate determination of whether the employee is a "qualified" individual for the job position.

Although this second example presents interesting questions, the Court notes, however, that it is in no way applicable to the this litigation and, therefore, does not affect the Court's reasoning on this issue.

7. Even under this hypothetical, however, it is not clear that plaintiff would ultimately prevail on this very confusing prong of the statute. That is, even if the employer reduced a plaintiff's duties as a result of the employer's belief, not concurred in by the employee, that the latter could no longer perform his regular duties as a result of his impairment, the employer would not "regard" the employee as disabled unless the employer also "perceived" this impairment to be "substantially limiting." 29 C.F.R. § 1630.2(*l*)(1).

Thus, to prove this element, plaintiff would have to show that he was not really disabled, but that the employer "perceived" him as such. Absent a direct statement by the employer that he perceived the employee to be substantially limited, the plaintiff would likely attempt to demonstrate the employer's "perception" by showing, circumstantially, the plausibility of a belief that the plaintiff's condition could, in some circumstances, be substantially limiting: an odd exercise for an employee who is claiming that he is not, in fact, substantially limited. Moreover, in explicating this element, the plaintiff would have to navigate the often complicated analysis concerning whether a particular impairment can be considered to be substantially limiting; for example, to substantially limit the major life activity of working, the impairment must significantly restrict the employee in the ability to perform either a class of jobs or a broad range of jobs in various classes. *See* discussion *supra* at 1169–1170. Again, as the employee is necessarily contending that he is *not* substantially limited in the activity of working, this is quite a hypothetical undertaking. Moreover, the fact·that the employer removes a particular duty from an employee as too strenuous does not necessarily mean that the employer has concluded that the employee is substantially limited in a major life activity.

Indeed, the reasoning becomes almost metaphysical under this abstruse part of the ADA and

case such as the pending case, however, where the employee informs the employer that he can no longer perform all of his job duties, the employer does not "regard" plaintiff as disabled, but instead accurately perceives the employee as unable or unwilling to perform all of his job duties. Under such facts, the appropriate analysis then becomes whether, in fact, plaintiff was substantially limited in a major life activity and, was thus, disabled in reality, thereby triggering the employer's duty to provide a reasonable accommodation; the "regarded as disabled" component should generally disappear. *See* discussion, *supra*, at 1169–1170. In summary, defendant did not "regard" plaintiff as disabled, within the meaning of the ADA.

### B. Is Plaintiff a Qualified Individual with a Disability

██ The second element of a claim of discrimination under the ADA requires plaintiff to demonstrate that he or she is a "qualified individual with a disability." 42 U.S.C. § 12112(a). To satisfy this burden, plaintiff must demonstrate that he or she is capable of performing the "essential functions" of the position in question, with or without "reasonable accommodation." 42 U.S.C. § 12111(8).

Defendant argues that plaintiff cannot perform several duties that he previously was required to perform and also argues that these duties are essential functions of the job for which no accommodation will permit plaintiff to accomplish these tasks. Plaintiff agrees that there are several duties that he can no longer perform, but contends that these particular duties are not essential and that defendant could restructure his job duties in such a way that plaintiff could still perform his job. Moreover, plaintiff argues that such restructuring of his job is a reasonable accommodation for defendant to make.

Having reviewed carefully the record, the Court concludes that there are disputed issues of fact concerning the above issue. Accordingly, because, on this record, the Court cannot conclude that a reasonable finder of fact would necessarily disagree with plaintiff's contentions on this issue, summary judgment for defendant is inappropriate and the Court hereby **denies** defendant's Motion For Summary Judgment as to the issue whether plaintiff was a qualified individual.

### CONCLUSION

The Court **GRANTS** defendant's Motion For Summary Judgment as to plaintiff's contention that defendant improperly "regarded" plaintiff as disabled. As to all other issues, however, defendant's motion for summary judgment is **DENIED**. The parties shall file a *Consolidated Pretrial Order* within **thirty (30) days of this Order.**

its interpretive regulations. Moreover, the number of people who could claim the type of treatment addressed in this part of the regulation is presumably quite small. Indeed, it is a rare plaintiff who claims that although he could do all functions of the job, an overly protective employer did not believe him physically capable. Typically, the plaintiff concedes that he cannot perform all functions, but argues that the employer should nevertheless make a concession as to any functions that the plaintiff cannot or will not perform. Absent a reassessment by Congress of the need for this provision—by balancing the presumably few employees covered by the provision against the litigation costs and attendant mental gymnastics that will be incurred in addressing the many innocently mistaken claims made under this confusing regulation—one can expect much litigation of this provision in the future.