**Jennifer Allisa BOOTHE, Plaintiff,**

v.

**William J. HENDERSON, Postmaster General of the United States, Defendant.**

**No. CV 197–176.**

United States District Court,
S.D. Georgia,
Augusta Division.

Dec. 18, 1998.

Sam G. Nicholson, Law Offices, Augusta, GA, for Plaintiff.

Edmund A. Booth, Jr., U.S. Attorney's Office, Augusta, GA, for Defendant.

## ORDER

BOWEN, Chief Judge.

Before the Court in the above-captioned matter is Defendant's Motion for Summary Judgment as to all claims in this employment discrimination case.[1] Upon consideration of the briefs and the relevant law, it is hereby **ORDERED** that Defendant's motion is **GRANTED** for the reasons stated below.

### I. BACKGROUND

Plaintiff, Jennifer Allisa Boothe (Boothe), was an employee of the United States Postal Service from May 1994 until March 1997. She is a twenty-eight-year-old white female. Boothe was hired at the Augusta Branch Postal Office as a part-time employee.

During a break from work on February 1, 1995, Boothe slipped and fell in the work bathroom. She received a head injury from the fall. Her husband took her to the emergency room where she was treated with anti-inflammatory and pain medication, then released. (Boothe Dep. at 23). Four days later, Boothe contacted her general practitioner, Dr. Jack Hudson, who referred her to a neurologist, Dr. John Reynolds.

On February 9, 1995, she was examined by Dr. Reynolds. Dr. Reynolds diagnosed Boothe with a "Musculoskeltal [sic] CX and lumbar sprain with pain of movement of neck and lower back." (Dr. Reynolds Dec. ¶ 4). He prescribed medication and physical thera-

---

**1.** The President of the United States appointed William J. Henderson to serve as Postmaster General, effective May 17, 1998. Pursuant to Fed.R.Civ.P. 25(d)(1), the Court substitutes Wil- liam J. Henderson as the Defendant in this litigation for Marvin T. Runyon, former Postmaster General of the United States Postal Service.

py and required Boothe "to refrain from working if it would require any lifting, pushing or pulling motions." (*Id.*). Plaintiff's last day at work was February 14, 1995. From that date until her termination on March 24, 1997, Boothe never returned to work at the post office.

Shortly after the fall, Boothe contends that she called the post office by telephone almost every day and informed her employer of her situation. During one of these telephone conversations, Boothe states that her Plant Manager, Antonio Menendez, "started yelling at" her about the fall and "was very berating." (Boothe Dep. at 34).

On February 14, 1995, Boothe contends that she went to work to complete some required training and to check on a problem with her paycheck. (*Id.* at 34). The training required her to listen to a presentation. While checking on the pay problem, Boothe contends that Mr. Paul Balducci, a supervisor, told Boothe that he needed an accident form filled out. Boothe told Mr. Balducci that Mr. Belangia, her direct supervisor, had told her that the form was already complete. Mr. Balducci, however, insisted that he never received the form and instructed Boothe to complete a form and give it to Mr. Menendez. (*Id.*).

Boothe states that when she tried to give the completed form to Mr. Menendez that he said, "why did [Mr. Balducci] have you fill it out . . . [t]his is not right. And he grabbed me, physically by the upper left arm with his right hand, pulled me out the door and started walking down the hallway." (*Id.* at 35). When they approached Mr. Balducci, Mr. Menendez said, "if you turn this in this way I will controvert it. And he turned and walked off." (*Id.* at 36).

Subsequently, Boothe submitted an application for workers' compensation benefits. She received benefits from February 1, 1995, until February 12, 1996. The benefits were terminated based upon an evaluation by another physician, Dr. Joe D. Christian, Jr. Boothe appealed her benefits termination and continues that appeal during the pendency of this litigation.

Boothe further states that in July 1995 she was stalked by Mr. Menendez while shopping at Wal–Mart. She filed a formal report with the police concerning the alleged incident. Mr. Menendez admits that while he was shopping at Wal–Mart he saw Boothe, he purchased a camera, and he took pictures of her. Mr. Menendez sent the pictures to the Postal Inspector and states that he had been instructed to "keep an eye on her" to see if she was capable of performing her job. (Menendez Dep. at 15).

Also in July 1995, the Defendant offered Boothe a "limited job" if she would return to work. (Boothe Dep. at 44). Limited duty is available to postal employees who are injured on the job. She did not accept the offer. (*Id.*). She stated that "[m]y doctor did not release me to accept the offer." (*Id.*).

As previously stated, on November 14, 1995, Dr. Joe D. Christian, Jr., examined Boothe on behalf of the Office of Workers's Compensation Programs (OWCP). He determined that she was not totally or partially disabled and could return to work. The Defendant received a report from OWCP outlining Dr. Christian's findings from the medical examination.

After receiving the report, Menendez sent Boothe a notice by certified mail directing her to report to work by January 8, 1996, or face possible termination. Boothe did not return to work. Subsequently, two additional notices were sent in February 1996 and April 1996 directing her to report to work. These notices also directed her to provide medical documentation concerning her inability to return to work or any physical limitations she might have if she did return. Boothe responded with a letter that Dr. Reynolds had not released her to return to work.

Almost a year later in January 1997, Boothe submitted a request to return to work under light duty. Her return was medically conditioned upon limitations of no pushing or pulling and lifting not to exceed 5–10 pounds. These limitations were indefinite in duration. On February 12, 1997, Defendant denied her request for return under a light duty assignment concluding that no light duty could be found within her re-

strictions. Defendant contends that a tray of mail weighs approximately twenty pounds or more. In this letter, Defendant informed Boothe of her right to apply for disability retirement.

On February 19, 1997, Defendant sent Boothe a notice of her proposed removal from employment because of her unavailability and inability to perform needed work. Boothe did not respond to the notice. On March 4, 1997, Defendant sent a letter of termination effective March 24, 1997.

According to Boothe, she attended regularly scheduled visits with Dr. Reynolds from February 1995 until her employment terminated. (Boothe Dep. at 25; Reynolds Decl. ¶ 7). She was last seen by Dr. Reynolds in March 1997. Dr. Reynolds states that Boothe "was never released by me to return to work at the post office." (*Id.*).

On June 16, 1997, Boothe filed a complaint alleging (1) sexual discrimination and harassment pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, (2) disability discrimination pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794, and (3) a state claim for intentional infliction of emotional distress. Defendant filed its Motion for Summary Judgment as to all claims on March 20, 1998.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Applicable substantive law determines which facts are material, that is, which facts have the potential to affect the outcome of the trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en

banc) (internal quotation marks and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the nature of the movant's initial burden "varies depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden either by negating an essential element of the non-movant's case or by demonstrating that there is an absence of evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Merely stating that the non-movant cannot meet the burden at trial is insufficient. *Id.*

If—and only if—the movant carries the initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608.[2] Again, this burden varies depending upon whether the movant or non-movant bears the burden of proof at trial. If the movant has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence sufficient to withstand a motion for directed verdict at trial. *Fitzpatrick*, 2 F.3d at 1116 (citation omitted). If the non-movant bears the burden of proof at trial, the non-movant's

---

**2.** The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th

Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

response must be tailored to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* If the movant demonstrated an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant, or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* (citation omitted).

The clerk has given the non-moving party notice of the summary judgment motion, of the right to file affidavits or other materials in opposition, and of the consequences of default. Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir.1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## III. ANALYSIS

In its motion, the Government correctly argues that the Postmaster General is entitled to summary judgment on all claims. Boothe cannot demonstrate a prima facie case of discrimination under either the Rehabilitation Act or Title VII nor can she demonstrate a case of sexual harassment. Moreover, Boothe cannot demonstrate a case of extreme emotional distress.

### A. *REHABILITATION ACT*

■ Section 504 of the Rehabilitation Act states in relevant part:

No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

To prove discrimination under the Rehabilitation Act, Boothe must demonstrate that she: (1) is "handicapped" within the meaning of the Act and relevant regulations, (2) is "otherwise qualified" for the position in question, (3) worked for a Program or activity that received federal financial assistance, and (4) was adversely treated solely because of her handicap. *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir.1994).[3] The Defendant does not contest that Boothe has a "handicap" or that the Postal Service is covered by the Act. Instead, Defendant argues that Boothe cannot establish that she is "otherwise qualified" and that Boothe was not terminated because of her handicap.

■ An individual is "otherwise qualified" if she is able to perform the essential functions of the job in question. *Id.* (citing *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). For a plaintiff to be "otherwise qualified," she must demonstrate that she can perform the essential functions of her job notwithstanding her handicap, or, can perform the essential functions of her job with a reasonable accommodation for her handicap. *Id.* at 278–79 (adopting two-step approach to analysis).

■ A reasonable accommodation may include "job restructuring, and part-time or modified work schedules," reassignment to a vacant position or other similar accommodations. *Id.* at 279. However, "reasonable" does not include "in any manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1285 (11th Cir.1997) (quoting *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 947 (N.D.Ga.1995)). Moreover, an "employer is under no obligation to eliminate or reallocate an essential job function in order to accommodate a disabled employee." *Sidaris v. Runyon*, 967 F.Supp. 1260, 1267 (M.D.Ala.1997).

■ A handicapped plaintiff has the burden of identifying an accommodation that will allow her to perform the job and demon-

---

**3.** The Court notes that cases decided under the ADA are helpful in analyzing Rehabilitation Act cases. *Haysman v. Food Lion, Inc.*, 893 F.Supp. 1092, 1102 (S.D.Ga.1995) ("Rehabilitation Act case law is applicable to ADA analysis."); *see also Chandler v. City of Dallas*, 2 F.3d 1385, 1391 (5th Cir.1993).

strating that such an accommodation is reasonable. *Id.; see also Willis v. Conopco,* 108 F.3d 282, 283 (11th Cir.1997). This accommodation must be identified at the time she notifies the employer of her handicap, not subsequently in the context of litigation. *Fussell v. Georgia Ports Auth.,* 906 F.Supp. 1561, 1569–70 (S.D.Ga.1995), *aff'd,* 106 F.3d 417 (11th Cir.1997). When assessing whether an accommodation is reasonable, a key factor is whether such accommodation would necessarily eliminate an essential function of the job. *Nassau,* 480 U.S. at 287 n. 17, 107 S.Ct. 1123.

Defendant correctly contends that Plaintiff cannot establish that she is capable of performing the essential functions for her job and that Boothe has failed to demonstrate a reasonable accommodation. In support, Defendant first notes that Boothe was totally absent from and unavailable to work from February 1995 until March 1997.[4] "When one is not present at work, he cannot perform any of the requirements of his job, essential or otherwise." *Haysman,* 893 F.Supp. at 1103.

Additionally, Boothe's medical condition was indefinite. Dr. Reynolds stated that a date for Boothe's return to work "could not be identified" and that "[s]he was *never* released by me to return to work at the post office." (Reynold's Decl. ¶¶ 8, 9). The Eleventh Circuit Court of Appeals has stated that an employee is not "otherwise qualified" when the employee requires indefinite medical leave. *Duckett v. Dunlop Tire Corp.,* 120 F.3d 1222, 1225 (11th Cir.1997). Thus, Boothe failed to establish that she was "otherwise qualified" under the act.

Boothe, however, contends that she requested a reasonable accommodation through light duty in January 1997. As previously stated, Defendant denied this request because there was no job available that did not require pushing, pulling, or lifting objects less than five pounds. Plaintiff's counsel argues it would not have been an "undue

hardship upon the employer to find other positions which did not include lifting and pulling." (Plaintiff's Response).[5] This argument is unavailing.

■■■ When transfer to another position is the proffered "reasonable accommodation," a plaintiff must identify a specific and vacant position. The Eleventh Circuit Court of Appeals has stated that " '[r]eassignment to another position is a required accommodation *only if there is a vacant position* available for which the employee is otherwise qualified.' " *Duckett,* 120 F.3d at 1224 (quoting *Willis,* 108 F.3d at 284) (emphasis added). Moreover, "whether a reasonable accommodation can be made for that employee is determined by reference to a *specific* position." *Id.* at 1225. (emphasis added). Boothe has presented no evidence that any accommodating position either existed or was vacant. Accordingly, Boothe is not "otherwise qualified."

### B. *TITLE VII*

Title VII creates a federal remedy for discrimination in the work place. Title VII provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII's proscription against sex-based discrimination obligates employers to provide a work place free of sexual harassment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

#### 1. *Gender Discrimination*

■■ In a case in which a plaintiff relies upon circumstantial evidence, as here, the United States Supreme Court has articulated a burden-shifting framework within which discrimination cases such as this one may be

---

4. Although Boothe requested light duty in January 1997, less than a month before she received her notice of removal, she was not available under any circumstances from February 1995 until January 1997, almost two years.

5. For reasons unknown to the Court, counsel did not number the pages in Plaintiff's Brief.

analyzed. *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. The burden of production then shifts to the employer to offer a legitimate, non-discriminatory reason for the plaintiff's termination. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Once such a reason is presented, the burden shifts back to the plaintiff to show either that the proffered reason was a mere pretext, or itself was unworthy of belief. *Id.* at 1529; *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff can show a proffered reason is unworthy of belief by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." *Combs,* 106 F.3d at 1538 (quoted sources omitted). In order to demonstrate pretext, a plaintiff must present evidence, including any previously produced evidence, that "cast[s] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Id.* (quoted sources omitted). Plaintiff, however, at all times carries the ultimate burden of proving by the preponderance of the evidence that the challenged employment decision was motivated by discriminatory animus. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. Although disbelief of the employer's proffered reason does not require judgment for the plaintiff, disbelief, together with the plaintiff's prima facie case, is sufficient circumstantial evidence to preclude entry of judgment as a matter of law. *Combs,* 106 F.3d at 1532.

### a. *Prima Facie Case of Gender Discrimination*

■ A plaintiff may establish a prima facie case of discriminatory treatment in employment by showing (1) she is a member of a protected class; (2) she was *qualified* for the position she held or the position she sought; and (3) she suffered adverse employment action in regard to the position she held while *employees outside the protected class were not so treated,* or she was rejected for the position she sought in favor of an employee outside the protected class. *See Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988); *McWilliams v. Escambia County Sch. Bd.,* 658 F.2d 326, 331 (5th Cir.1981); *see also Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984). The third element is designed to require the plaintiff to show a causal relationship between her status as a member of a protected class and the adverse action that she suffered.

■ First, Boothe cannot demonstrate that she was qualified for her job when she was terminated, the only adverse employment action she alleges.[6] Indeed, Plaintiff's Brief merely alleges that she was qualified *prior* to the accident, more than two years before her termination. Even if she were qualified, Boothe has presented no evidence that male employees—persons outside her protected class—were not terminated for extensive periods of absence from work. Instead, Boothe only contends that no male employees were stalked or verbally berated. This contention, however, is misplaced because these allegations relate to her harassment claim and not her gender discrimination claim. Boothe has failed to establish a casual relationship between her status as a female and her termination.

---

**6.** "Adverse employment action" does not have to be an ultimate employment decision. *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998). The term is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands. Boothe, however, only alleges termination.

#### 2. Sexual Harassment

In her Complaint, Boothe alleges sexual harassment under Title VII.[7] Sexual harassment is actionable under Title VII only if the objectionable conduct is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Dees v. Johnson Controls World Serv., Inc.*, 938 F.Supp. 861, 865 (S.D.Ga.1996) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Unfortunately, there is no formula or other means of mechanical application to determine whether sexual harassment is actionable under Title VII. Whether sexual harassment is sufficiently severe or pervasive to support a Title VII remedy must be determined upon the "totality of the circumstances." *Henson*, 682 F.2d at 904.

There are two types of sexual harassment actionable under Title VII: hostile environment cases and *quid pro quo* cases. *See generally Henson*, 682 F.2d at 897. Hostile environment sexual harassment entails a pattern of conduct in the work place that unreasonably interferes with an employee's job performance by creating a hostile, intimidating, or offensive work environment. *Vinson*, 477 U.S. at 65, 106 S.Ct. 2399. A *quid pro quo* case involves a supervisor's attempt to garner sexual consideration from an employee by offering job benefits as a *quid pro quo*. *Henson*, 682 F.2d at 908–11. Boothe does not specifically identify which type of sexual harassment she allegedly suffered. Since there are no allegations of sexual favors, the Court will construe her claim as alleging a hostile environment.

In order to establish a hostile work environment claim, Boothe must show that (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment, (3) that the harassment was based upon her sex, (4) that it was so severe and pervasive to affect her employment, and (5) that her employer knew or should have known of the harassment. *EEOC v. Union Camp Corp.*, 7 F.Supp.2d 1362, 1373 (S.D.Ga.1997). The nature of the alleged harassment does not have to be explicitly sexual in nature to constitute sexual harassment. *Id.* at 1374.

Under Title VII an aggrieved federal employee "must initiate contact with a counselor within 45 days of the date of the matter to be alleged as discriminatory." 29 C.F.R. § 1614.105. "[A] federal employee's unexcused failure to timely initiate an administrative discrimination complaint results in dismissal of the suit for failure to state a claim upon which relief may be granted." *Thompson v. West*, 883 F.Supp. 1502, 1507 (M.D.Ala.1995). This requirement is in the nature of a statute of limitations and is subject to waiver and equitable tolling. *Howell v. Department of the Army*, 975 F.Supp. 1293 (M.D.Ala.1997).

Boothe alleges that she was subject to sexual harassment because she was "stalked" at Wal–Mart, a supervisor physically grabbed her by the arm and took her to see another supervisor, and she was verbally berated by her supervisor during at least two telephone conversations. All of these allegations occurred before July 16, 1995. Boothe did not contact her EEO counselor until November 6, 1995, and did not file her EEO complaint until November 28, 1995. Thus, all of her allegations are outside the 45–day time limit, and I find no reason to equitably toll the requirement.

Nevertheless, Boothe has failed to show that these allegations were based on her sex or that the allegations were sufficiently severe or pervasive to constitute a claim for hostile work environment. Accordingly, Boothe has failed to demonstrate a claim for sexual harassment.

#### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to prevail on her claim of intentional infliction of emotional distress Boothe must show (1) that the conduct upon which her claims are based was intentional or

---

7. While Boothe alleges sexual harassment in her Complaint, she does not address a hostile work environment theory in her brief. In an abundance of caution, the Court addresses the issue as though she had properly argued her claim.

reckless; (2) that the conduct was extreme and outrageous; (3) that there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe. *Bridges v. Winn–Dixie Atlanta, Inc.*, 176 Ga.App. 227, 230, 335 S.E.2d 445 (1985). To prevail on her claim, Boothe must carry a "stringent burden." *Id.* at 229, 335 S.E.2d 445.

Boothe basically alleges three separate incidents that caused her both physical and mental anguish. As already stated, Menendez allegedly grabbed plaintiff by the arm while taking her to see another supervisor and berated her on the telephone in March and April 1995 about the fall. Additionally, she was allegedly stalked by Menendez at Wal–Mart in July 1995. In her deposition, Boothe states that she was in Wal–Mart with her husband and daughter when the alleged stalking occurred. (Boothe Dep. at 49–50). She states that she was able to shop and had no physical or verbal contact with him. (*Id.*) Menendez only followed her through the store and took pictures of her leaving the store and on her way to her house.

 Under Georgia law, for behavior to support a claim of intentional infliction of emotional distress, the behavior must be "so terrifying or insulting as naturally to humiliate, embarrass, or frighten." *Sossenko v. Michelin Tire Corp.*, 172 Ga.App. 771, 772, 324 S.E.2d 593 (1984); *see also Moses v. Prudential Ins. Co.*, 187 Ga.App. 222, 225, 369 S.E.2d 541 (1988). "Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness." *Moses*, 187 Ga.App. at 225, 369 S.E.2d 541. The resulting emotional distress must also be severe to impose liability. *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 409 S.E.2d 835, 837 (1991). Whether conduct is sufficiently outrageous and whether the resulting emotional distress is sufficiently severe to support a claim of intentional infliction of emotional distress are questions of law. *Id.*

The only allegation requiring any discussion is Boothe's stalking allegation. In a far more egregious stalking case, the Eleventh Circuit Court of Appeals found that the district court properly granted summary judgment in favor of the defendant as to the plaintiff's claim of intentional infliction of emotional distress. *Summers v. Bailey*, 55 F.3d 1564 (11th Cir.1995) (applying Georgia law).[8] The plaintiff in *Summers* purchased a grocery store from the defendant. Afterwards, the defendant "would appear at her grocery store and exhibit a large hand gun which he carried, would park outside of the store for hours watching her, and would tell her and her customers that he wanted her out of the store." *Id.* at 1565–66. Moreover, the defendant "would follow her in his truck as she ran errands, and that ... he alternately parked his truck on her property, parked near her residence, and parked in the woods by her house, following her as she departed from her home." *Id.* at 1566. Menendez actions do not even come close to the conduct in *Summers*. As I read decisions on Georgia law, the acts alleged by Boothe do not rise to the level of outrageousness and egregiousness required to sustain her claim for intentional infliction of emotional distress.

## IV. CONCLUSION

Upon the foregoing, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment as to all claims is **GRANTED**. The Clerk is instructed to **CLOSE** this case and **ENTER FINAL JUDGMENT** in favor of the Defendant. Costs are taxed against Plaintiff.

---

8. The *Summers* court reversed the district court's ruling as to the plaintiff's invasion of privacy claim.